NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 11a0484n.06

No. 09-4421

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EVER ALEXANDER HERNANDEZ-VASQUEZ,

    Petitioner,

      v.

ERIC H. HOLDER, JR., Attorney General,

    Respondent.

FILED

**Jul 14, 2011**

LEONARD GREEN, Clerk

On Petition for Review of an Order of the Board of Immigration Appeals

---

**Before:**     **BATCHELDER, Chief Circuit Judge; GUY, and MOORE, Circuit Judges.**

    **Ralph B. Guy, Jr., Circuit Judge.**     Petitioner Ever Alexander Hernandez-Vasquez, a native and citizen of El Salvador, petitions for review of the final decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's decision terminating his asylum and finding him ineligible for cancellation of removal. The crux of the BIA's decision, and this appeal, was the finding that petitioner had been convicted of a "particularly serious crime" for purposes of § 208(b)(2)(A)(ii) and (c)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(2)(A)(ii) and (c)(2)(B). Petitioner argues that the Immigration Judge and the BIA erred by considering evidence outside the record of conviction when there were no elements in common with the originally indicted offense.

After review of the record and consideration of the arguments presented on appeal, we deny the petition for review.

## I.

Petitioner, born August 25, 1976, entered the United States without being admitted or paroled, and received derivative asylum based on the application of his mother on September 14, 1989. An indictment returned in May 2004 charged petitioner with five counts of gross sexual imposition involving sexual contact with a girl while she was between eight and ten years of age, in violation of Ohio Rev. Code § 2907.05. Petitioner pleaded guilty to one count of child endangerment, a third degree felony under Ohio Rev. Code § 2919.22. On June 16, 2005, at age 29, petitioner was sentenced to two years of imprisonment and *nolle prosequi* was recorded as to counts 2, 3, 4, and 5 of the indictment. The conviction was affirmed on appeal.[1]

Removal proceedings initiated in March 2006 charged petitioner with inadmissibility both as an alien present without admission or parole (8 U.S.C. § 1182(a)(6)(A)(i)), and as an alien convicted of a "crime involving moral turpitude" (CIMT) (8 U.S.C. § 1182(a)(2)(A)(i)(I)). In November 2007, after several preliminary hearings, proceedings were commenced to terminate petitioner's asylum status based on his conviction by final judgment of a "particularly serious crime" (8 U.S.C. § 1158(b)(2)(A)(ii) and (c)(2)). *See* 8

---

[1]Petitioner unsuccessfully attempted to withdraw the plea, claiming that although he was advised that the plea could have immigration consequences, he was not aware at the time that he was not a United States citizen. Also, the plea was supposed to be to an amended count 1, but no amended indictment was filed. The state court of appeals held that any defect was waived by the plea.

C.F.R. §§ 1208.24(a)(3) and 1208.13(c)(2) (governing asylum applications filed before April 1, 1997).

A hearing before the Immigration Judge (IJ) followed in September 2007, at which the government introduced evidence outside the record of conviction that included the indictment, guilty plea form, judgment, presentence report, and portions of transcripts from the criminal proceedings. Petitioner objected to consideration of this evidence in determining whether his conviction was for a "particularly serious crime." The IJ overruled petitioner's objections in an interim order, relying on the BIA's recent decision clarifying what evidence may be considered in making the particularly-serious-crime determination. *See Matter of N-A-M*, 24 I&N Dec. 336 (BIA 2007), *aff'd* 587 F.3d 1052 (10th Cir. 2009), *cert. denied*, 131 S. Ct. 898 (2011). Petitioner offered no additional evidence on the issue, and on July 1, 2008, the IJ terminated petitioner's asylum status based on the finding that the conviction for child endangerment was a "particularly serious crime."

Relying on that determination, the IJ next found that petitioner was removable based on petitioner's admission that he originally entered the United States without inspection and therefore was present without admission or parole. In May 2009, however, on a motion for reconsideration in light of the intervening decision in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008), the IJ revisited the second charge and concluded that petitioner was also removable as an alien convicted of a CIMT. Lastly, in an oral decision rendered at the conclusion of a hearing on July 19, 2009, the IJ summarized petitioner's testimony and

articulated the reasons for denying petitioner's applications for withholding of removal, protection under the Convention Against Torture (CAT), and cancellation of removal.

Since neither petitioner's appeal to the BIA nor the instant petition for review meaningfully contested the denial of withholding of removal or protection under the CAT, we do not recount the evidence or the findings with respect to his failure to establish past persecution, a well-founded fear of future persecution, or a likelihood that he would be subjected to torture if he were to return to El Salvador. With respect to the cancellation of removal, there was no dispute that petitioner met the requirement that he be continuously present in the United States for not less than ten years preceding the application. However, the IJ concluded that the other requirements had not been met because petitioner (1) had not been a person of "good moral character" during that time; (2) had a disqualifying conviction for a CIMT; and (3) failed to establish that his removal would result in "exceptional and extremely unusual hardship" to his mother or daughter who were United States citizens. The IJ also concluded that, even if eligibility had been established, petitioner did not merit the favorable exercise of discretion with respect to the cancellation of removal.

On appeal, the BIA, expressly declined to reach the question of whether the conviction was for a CIMT; affirmed the termination of petitioner's asylum on the basis that he was convicted of a "particularly serious crime"; and agreed that petitioner was ineligible for cancellation of removal because he had failed to establish that his removal would result in exceptional and extremely unusual hardship to his qualifying relatives. As here, the hardship

question was not contested by petitioner. The BIA dismissed the appeal on October 20, 2009, and this timely petition for review was filed on November 19, 2009.

## II.

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination. To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citation omitted). As such, it is clear from our review of the proceedings that the only question presented by the petition for review is whether the BIA erred in affirming the termination of asylum based on the determination that petitioner's conviction for child endangerment was a "particularly serious crime." It was on that basis that the BIA found petitioner was removable—not the IJ's additional determination that the conviction also qualified as a CIMT.[2]

The government acknowledges this court's holding following *Kucana v. Holder*, 130 S. Ct. 827 (2010), that the jurisdiction-stripping provisions of the Act do not extend to the Attorney General's authority to "determine" or "decide" whether an alien is ineligible for asylum (or withholding of removal) under 8 U.S.C. § 1158(b)(2)(A)(iii) (or § 1231(b)(2)(B)(iii)) (serious nonpolitical crime). *See Berhane v. Holder*, 606 F.3d 819, 821-22 (6th Cir. 2010). The reasoning applies here as well, and we have jurisdiction to review

---

[2]Having denied withholding of removal on other grounds, neither the IJ nor the BIA found it necessary to decide whether withholding would also be barred because petitioner had been convicted of a "particularly serious crime" for purposes of § 241(b)(3)(B)(ii) of the Act. *See* 8 U.S.C. § 1231(b)(3)(B)(ii).

the determination that petitioner, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii).

The term "particularly serious crime" is not defined, but in the context of asylum "special rules" provide that "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime" and the "Attorney General may designate by regulation" offenses that will be considered to be particularly serious crimes. 8 U.S.C. § 1158(b)(2)(B)(i) and (ii). Otherwise, the Attorney General, through the BIA, determines through case-by-case adjudication whether a conviction is a "particularly serious crime" which is entitled to *Chevron* deference as long as it represents a permissible reading of the statute. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). The BIA's interpretation of the standards to be employed, including the most recent clarification of what evidence may be considered, is found in the precedential decision *Matter of N-A-M*.

Without referencing *Matter of N-A-M*, petitioner relies heavily on authority addressing the manner for determining whether a conviction qualifies as a CIMT to argue that it was error for the BIA and the IJ to look beyond the elements of the offense of conviction for child endangerment to arrive at a sex-oriented offense. The BIA, however, explained in *Matter of N-A-M* that the determination is made by examining "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *Matter of N-A-M*, 24 I&N Dec. at 342. Noting that, at times, the determination may be made

exclusively from the elements of the offense, *i.e.*, the nature of the crime, the BIA explained that:

> If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal [or asylum]. On the other hand, once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction. *Matter of L-S*, [22 I&N Dec. 645 (BIA 1999)].

*Id.* Applying this standard, the BIA found that the IJ had properly considered a statement made in support of the warrantless arrest of N-A-M to find that the conviction for felony menacing was particularly serious.

Petitioner relies on one pre-*Matter of N-A-M* decision from the Ninth Circuit that found error in the IJ's reliance on facts recited in the state appellate court decision that had not been admitted or established. *See Morales v. Gonzales*, 478 F.3d 972 (9th Cir. 2007). According to the BIA, *Morales* was based on a misreading of the earlier precedential decision in *Matter of L-S*. *Matter of N-A-M*, 24 I&N Dec. at 343-44; *see also Anaya-Ortiz v. Holder*, 594 F.3d 673, 675-79 (9th Cir. 2010) (acknowledging the BIA's explanation of *Morales* and deferring to the BIA's interpretation regarding what evidence may be considered in determining whether a crime is particularly serious). In fact, the BIA noted that no decision "has ever suggested that the categorical approach . . . is applicable to the inherently discretionary determination of whether a conviction is for a particularly serious crime." *Matter of N-A-M*, 24 I&N Dec. at 344.

Consistent with *Matter of N-A-M*, the IJ first found that the nature of the crime, judged by its elements, suggested a likelihood that the offense could be considered particularly serious. The BIA emphasized that, although Ohio Rev. Code § 2919.22 is divisible, all of the offenses were crimes against persons and therefore more likely to be considered particularly serious. Moreover, the statute proscribes activities that endanger children, including, abuse, torture, excessive corporal punishment, modeling a child in a sexually explicit pose, and allowing a child to be within 100 feet of real property where drugs are manufactured. Finding that the statute likely encompassed particularly serious offenses, the IJ found the presentence investigation report and the transcripts from the state court proceedings reliable and relevant.

Petitioner's conviction arose out of the indictment on five counts of gross sexual imposition, of which count one alleged sexual contact with an eight- to nine-year old girl. The IJ recognized that petitioner was not convicted of a sex offense or required to register as a sex offender, but relied on the factual basis offered at the time of the guilty plea to the amended charge of child endangerment that described the offense based on the victim's statement that she fell asleep at a drive-in movie theater, awoke to find petitioner touching her private area through her clothing, and was told by petitioner not to tell anyone. This, it was noted, was also consistent with the rendition of the event found in the presentence report prepared for the single count of child endangerment. Nor did the failure to amend the indictment—a defect found by the state court to have been waived by the guilty plea—render the factual basis for the plea irrelevant or unreliable. Another indicia of seriousness

identified by the IJ and the BIA was petitioner's sentence of two years of imprisonment and the sentencing judge's comment that a lesser sentence "would demean the seriousness of the Defendant's conduct." The IJ and the BIA did not err in considering evidence outside the elements of the offense of conviction in determining that petitioner's conviction was a "particularly serious crime."

The petition for review is **DENIED**.