NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0021n.06

No. 23-3483

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jan 18, 2024

KELLY L. STEPHENS, Clerk

LUIS ALONSO AGUILAR PERALTA,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

OPINION

---

Before: BOGGS, GILMAN, and NALBANDIAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Luis Alonso Aguilar Peralta, a native and citizen of El Salvador, seeks review of a decision by the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons set forth below, we **DENY** Aguilar Peralta's petition for review.

## I. BACKGROUND

On June 29, 2015, Aguilar Peralta entered the United States without being admitted or paroled by an immigration officer. The Department of Homeland Security served him with a Notice to Appear (NTA) in September 2015, charging him with inadmissibility under the Immigration and Nationality Act (INA). *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Appearing with counsel before an immigration judge (IJ), Aguilar Peralta admitted the factual allegations set forth in the NTA and conceded removability as charged. He subsequently applied for asylum and

withholding of removal based on his membership in a proposed "particular social group," which he defined as the "family of a police officer who received death threats and whose family member was killed by the [MS-]18 gang." In addition, he applied for relief from removal under the CAT.

Aguilar Peralta testified before the IJ at a merits hearing in support of his application for relief. He stated that his family had been extorted by members of the MS-18 gang since 2014. In June 2015, Aguilar Peralta witnessed members of the MS-18 gang shoot his cousin Adonias, who was a member of the Salvadoran federal police. Adonias survived the shooting, but gang members kidnapped Edwin, another one of Aguilar Peralta's cousins, shortly afterwards. Aguilar Peralta testified that he did not know what happened to Edwin after the kidnapping, and that "[i]t's very possible" that Edwin is dead.

In the days immediately after the shooting, members of the MS-18 gang called Aguilar Peralta repeatedly to warn him against reporting the attack to the police. They also came to Aguilar Peralta's home to threaten him and his father, "telling [them] not to ever say anything" about the shooting. Aguilar Peralta nevertheless filed a police report, and the police investigated. Five days after the shooting, Aguilar Peralta fled El Salvador. His parents later moved to a neighboring city, and Aguilar Peralta testified that they have not "had any trouble" with the gang since their move.

Despite noting discrepancies between Aguilar Peralta's testimony and the dates listed in his supporting documentation, the IJ adopted his testimony "for the purposes of issuing [its] decision and applying the law." But, even adopting Aguilar Peralta's version of the facts, the IJ found that Aguilar Peralta was ineligible for asylum because (1) the harm Aguilar Peralta suffered did not rise to the level of past persecution, (2) Aguilar Peralta's proposed particular social group was not cognizable, (3) Aguilar Peralta failed to establish a nexus between the harm suffered and his proposed group, (4) the Salvadoran government was not unable or unwilling to control the

gangs in light of its investigation into the attack on Adonias, and (5) internal relocation within El Salvador was reasonable because Aguilar Peralta's parents safely relocated to a neighboring city.

As for withholding of removal, the IJ concluded that "[b]ecause [Aguilar Peralta] can't meet his burden of proof for asylum, he can't meet the higher burden of proof for withholding of removal under Section 241(b)(3) of the [INA]." The IJ also denied CAT relief "because there is no evidence that it's more likely than not that [Aguilar Peralta] would be tortured by government actors in El Salvador, or that the government would acquiesce in his torture o[r] be willfully blind to the gang members' actions."

Aguilar Peralta appealed the IJ's decision to the BIA. The BIA affirmed the IJ's denial of asylum and withholding of removal because Aguilar Peralta "[did] not meaningfully challenge" the IJ's dispositive findings that (1) there was no nexus between the harm Aguilar Peralta suffered and his proposed particular social group, and (2) that Aguilar Peralta did not establish that the Salvadoran government was unable or unwilling to control the gang members. As for CAT relief, the BIA affirmed the IJ's finding that Aguilar Peralta had not shown that the government would consent or acquiesce to his torture by the gang members. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

When the BIA "issues its own opinion rather than summarily adopt[ing] the findings of the IJ," we review the BIA's decision as the final agency determination. *Bi Xia Qu v. Holder*, 618 F.3d 602, 605 (6th Cir. 2010). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review the IJ's and the BIA's factual findings under the substantial-evidence standard. *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019). Such findings

"may be reversed only if the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014) (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004)) (emphasis in original).

**B.      Asylum and withholding of removal**

On appeal to this court, Aguilar Peralta argues that his proposed particular social group is cognizable, and that the harm he suffered rose to the level of past persecution. The BIA, however, did not dismiss his appeal on either of those grounds. Instead, it held that Aguilar Peralta had waived any challenge to the IJ's two dispositive findings: (1) that there was no nexus between the harm Aguilar Peralta suffered and his membership in his proposed particular social group, and (2) that Aguilar Peralta did not establish that the Salvadoran government was unwilling or unable to control the MS-18 gang members.

Aguilar Peralta does not dispute that he waived any challenge to the IJ's nexus and government-protection rulings. His claim for asylum and withholding of removal would therefore fail even if he prevailed on his social-group and past-persecution arguments. *See, e.g.*, *Turcios-Flores v. Garland*, 67 F.4th 347, 357 (6th Cir. 2023) ("Referred to as the 'nexus' determination, a petitioner must demonstrate that their membership in the particular social group served as 'one central reason' for the petitioner's persecution."); *Gonzalez Ortiz v. Garland*, 6 F.4th 685, 688 (6th Cir. 2021) ("[W]e have . . . required asylum applicants who fear private violence to prove that the government is unable or unwilling to control the private party."). We have also held that applicants who "d[o] not challenge [the agency's adverse determination] in their opening brief before this court" have "thus waived th[e] dispositive issue." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1154–55 (6th Cir. 2010); *see also Menendez-Antonio v. Garland*, No. 21-3607, 2023 WL 2155052, at *3 (6th Cir. Feb. 22, 2023) (declining to address the

4

petitioners' arguments because "[t]he petitioners do not address the nexus issue in their brief" and thus "have forfeited their challenge to the denial of their asylum applications"). We thus affirm the BIA's dismissal of Aguilar Peralta's appeal regarding his claims for asylum and withholding of removal.

## C.    CAT relief

As for relief under the CAT, Aguilar Peralta argues that the BIA erred in concluding that he had not shown that the Salvadoran government would consent or acquiesce to his torture by MS-18 gang members. We find no such error.

"The CAT protects those who would more likely than not be subject to torture 'inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.'" *Turcios-Flores*, 67 F.4th at 359 (quoting 8 C.F.R. § 1208.18(a)(1)). As a result, "a petitioner may be without CAT protection even if it is more likely than not that they will be tortured by private parties, so long as the government has not consented to, acquiesced in, or engaged in willful blindness towards this torture." *Id.*

Aguilar Peralta relies largely on country-conditions evidence, which indicates that criminal organizations operate with impunity within El Salvador despite efforts by the government to investigate and prosecute them. This court, however, has held that "the Salvadoran government['s inability] to control the gangs does not constitute acquiescence" when (1) the evidence indicates that the Salvadoran government had made "deliberate attempts to reduce corruption," and (2) "neither [the petitioner]'s, nor the other witnesses' testimony indicated that the police participated in, consented to, or willfully ignored the gang's brutality." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015).

Aguilar Peralta, the only person to testify in this case, did not say that he had personally witnessed any consent, acquiescence, or participation by the government in the gang attack. Rather, he testified that the police were investigating the attack on his cousin Adonias (who himself was a Salvadoran police officer) at the time Aguilar Peralta fled El Salvador. The record is unclear as to what the police investigation entailed or whether it resulted in the gang members' arrests. But this court has affirmed the denial of CAT relief where, as is the case here, "evidence in the record supports the conclusion that [the country] is trying to prevent gang violence and extortion— even if it failed in [the petitioner]'s case." *See Turcios-Flores*, 67 F.4th at 359. We therefore cannot say that this is a case where "the evidence not only supports a contrary conclusion, but indeed compels it" regarding Aguilar Peralta's claim for CAT relief. *See Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014) (cleaned up).

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Aguilar Peralta's petition for review.